## Alexander v. Pa. National Mutual Casualty Insurance Co.

*H. Anthony Adams,* for plaintiff.
*William P. Douglas,* for defendant.

BAYLEY, *J.,* November 13, 1984—Plaintiff was employed as a heavy highway laborer with Union Local 158. His job entailed using road tampers and jack hammers of the 40, 70 and 95 pound variety. He was injured as a passenger in an automobile accident on August 3, 1981, after which he submitted a claim for work-loss benefits to defendant, Pennsylvania National Mutual Casualty Insurance Company, the carrier for the operator of the vehicle which was involved in the accident.

The maximum coverage for work loss benefits to which plaintiff would be entitled is $15,000. The insurance carrier made 12 monthly installments of $976. per month totalling $11,712. through August of 1982. It terminated benefits based upon a written report it received from Robert D. Rector, M.D., plaintiff's physician, dated August 8, 1982, which stated:

"Fracture of right elbow completely healed and in good position at time of last x-ray on 12/14/81. Patient has a residual limitation of extension of ap-

proximately 30°. I suspect this will be permanent, but patient has a functioning, useful arm and could return to work."

Plaintiff has instituted this suit for $3288. with interest and counsel fees representing the difference between the amount paid and the $15;000. maximum work loss benefit provided for under the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, (40 P.S. §1009.101 et seq.).

Plaintiff testified that he came under the care of Dr. Rector immediately following his accident. Dr. Rector is a general surgeon with 30 years experience. He was not released by his physician until December 15, 1982. After a cast was removed from plaintiff's arm on August 7, 1981, he was having difficulty mobilizing his elbow. On September 19, 1981, physio-therapy was commenced. This therapy continued through numerous sessions until the patient was seen by Dr. Rector on May 27, 1982. As of that date the doctor noted that the bone had normally healed and there was no x-ray evidence of any disability although he suspected that there would be a permanent 20 percent to 30 percent incomplete extension of the elbow. Otherwise, he felt that the arm was quite muscular and could be a good functional arm. His trial testimony, however, indicated that he felt that while work could help the muscle tone plaintiff could not have initially undertaken strenuous work or operated a jack hammer although he could have worked up to it "very quickly."

Plaintiff testified that after this examination on May 27, 1982, he sought work at the Union Hall but was unable to obtain any because the only work that was available involved his previous job of operating a jack hammer. Unfortunately, plaintiff then broke

his ankle in an unrelated incident on July 10, 1982. He was operated on and casted by another physician after which he returned to see Dr. Rector regarding his elbow injury on September 2, 1982. At this time Dr. Rector realized that there had been a set back for the mobilized elbow during the period of time in which plaintiff was recovering from his broken ankle and not receiving physio-therapy. He put plaintiff back into a physio-therapy program which was terminated on December 16, 1982, after good results were obtained.

## DISCUSSION

The insurance carrier terminated plaintiff's disability based upon Dr. Rector's report to them of August 8, 1982.* On the other hand, Dr. Rector's trial testimony is not consistent with his August 8, 1982 report. His testimony reveals that he had not authorized plaintiff to return to his prior employment on May 27, 1982; he had only released him to obtain work that would not be "very strenuous." Plaintiff attempted to get such work but it was unavailable and then he broke his ankle.

When he again saw Dr. Rector on September 9, 1982, his elbow had not healed satisfactorily and the doctor put him back into a physio-therapy program until it was discontinued with good results on December 16, 1982.

The insurance carrier had defended this case on the basis that no further work loss benefits are due

---

* They had received an earlier report, dated December 18, 1981, from the doctor indicating that x-rays showed complete healing and a 30° limitation of complete extension. Although the doctor was hopeful at the time that plaintiff would return to work in "approximately one month," this projection proved overly optimistic.

to plaintiff. The record is completely devoid of any evidence as to what plaintiff could have earned in any substitute work he was capable of performing as of May 27, 1982. Accordingly, the only evidence as to what date plaintiff could return to his job as a heavy highway laborer is December 16, 1982, the date plaintiff was released by Dr. Rector to return to that job after he had completed physio-therapy and attained good muscular development in the right arm which, according to the doctor, required no further therapy.

We are satisfied that plaintiff has met his burden of proof showing that he suffered lost wages due to his accident in September, October, November and through December 16, 1982.

Section 107(3) of the No-fault Act provides:

"If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

It is apparent that this dispute arose as a result of the manner in which plaintiff's own physician reported his condition and availability for work to the insurance carrier. Accordingly, we do not deem the carrier's action in terminating plaintiff's benefits as having been done without reasonable foundation. Therefore, plaintiff's demand for counsel fees is denied.

## ORDER OF COURT

And now, this November 13, 1984, I find in favor of plaintiff and award damages as follows:

1. $976 with interest at 18 percent per annum from September 30, 1982.

2. $976 with interest at 18 percent per annum from October 31, 1982.

3. $976 with interest at 18 percent per annum from November 30, 1982.

4. $360 with interest at 18 percent per annum from December 31, 1982.